UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 12-437(DSD/JJG)

Julie A. Lichty,

      Plaintiff,

v.                                      **ORDER**

Allina Health System,

      Defendant.

    Matthew H. Morgan, Esq., Timothy C. Selander, Esq. and Nichols Kaster, PLLP, 80 South Eighth Street, Suite 4600, Minneapolis, MN 55402, counsel for plaintiff.

    Alyssa M. Toft, Esq., Sara Gullickson McGrane, Esq., Jessica M. Marsh, Esq. and Felhaber, Larson, Fenlon & Vogt, PA, 220 South Sixth Street, Suite 2200, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the motion for summary judgment by defendant Allina Health System (Allina). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

This employment dispute arises out of the April 11, 2011, termination of plaintiff Julie A. Lichty by Allina. Lichty was employed as a registered nurse at Mercy Hospital (Mercy)[1] in Coon Rapids, Minnesota from 1998 until her termination. Lichty Dep.

---

[1] Mercy is a hospital within the Allina Health System. Uhr Dep. 10:6-8.

104:23-105:13. At the time of her termination, Lichty worked in the Interventional Radiology Department (IRD) at Mercy. Id. at 105:10-13.

Among other duties, Lichty was responsible for providing medication to IRD patients via a Pyxis machine. Uhr Dep. 18:11-22. IRD nurses receive medication from the Pyxis by selecting a patient's name and a type and dosage of medication from the machine's touch-screen. Id. at 18:16-19:1. Per Mercy policy, after administering medication, nurses must promptly record the dosage in the patient's Medication Administration Record (MAR). Id. at 15:15-18. If any portion of the dispensed medication is not used, nurses must "waste" the excess in the presence of another nurse.[2] Id. at 21:5-13.

Mercy had several safeguards in place to track discrepancies in medication administration. Dottie Gee, the Pharmacy Narcotics Auditing Technician, periodically compiled "Hot Lists" of medication discrepancies. Gee Dep. 14:6-20, 16:5-19. Further, any discrepancies involving controlled substances were to be reported to the Director of Pharmacy. Id. at 61:15-20; Vander Pol Aff. Ex. Q, at NKA0000895.

In October 2010, Lichty was diagnosed with breast cancer. Lichty Dep. 273:17-20. Mercy approved a request for continuous

---

[2] "Wasting" requires the nurse to physically dispose of excess medication into a drain or trash receptacle. Uhr Dep. 21:6-9.

Family and Medical Leave Act (FMLA) leave from November 3, 2010, to December 27, 2010, so that Lichty could undergo cancer-related surgery. Id. at 167:21-168:17; Vander Pol Aff. Ex. S. When Lichty returned, she was restricted from lifting, pushing or pulling more than ten pounds. Lichty Dep. 117:13-20. Lichty was also on intermittent FMLA leave from January 2011 to June 2011 for follow-up appointments and on days when she experienced serious pain. Anderson Dep. 112:1-11.

During this intermittent leave, at least five of Lichty's co-workers complained to her supervisor, Patient Care Manager Ben Anderson, about accommodating her restrictions and leave. Id. at 116:3-20. Lichty alleges that several co-workers also made negative comments to her about the restrictions and refused to help when she requested assistance. Lichty Dep. 60:13-61:19. In late February 2011, Lichty informed Anderson of these comments and actions. Id. at 64:6-8. At that meeting, Anderson inquired about the duration of Lichty's restrictions and informed her that Allina would continue to accommodate her "until it became a problem or issue for" Allina. Id. at 61:22. On March 11, 2011, Anderson gave Lichty a "meets expectations" rating at her annual performance review. Vander Pol Aff. Ex. W. Lichty alleges that during her review meeting, however, Anderson expressed concerns about her "excessive absenteeism." Lichty Dep. 171:5-7.

Thereafter, in March 2011, a fellow IRD nurse, Rosemary Olson, reported concerns with Lichty's medication documentation to Patient Care Supervisor Lori Kowalski. R. Olson Dep. 27:14-23. Kowalski reported the concerns to Anderson, and the two began investigating Lichty's documentation records. Anderson Dep. 157:9-158:10. Prior to this point, Lichty had never appeared on any Hot Lists. Gee Dep. 78:14-22.

At the request of Anderson and Kowalski, Gee conducted an audit of Lichty's medication documentation for March. Id. at 118:19-119:6; Vander Pol Aff. Ex. Z. Gee concluded that Lichty had twenty-five unresolved medication discrepancies in March. Gee Dep. 97:20-24. Moreover, Gee found that Lichty had charted medication under the wrong patient several times. Anderson Dep. 170:18-21, 171:12-16. Gee also found that on nine occasions in March, Lichty had removed medication from the Pyxis without any corresponding MAR documentation. Toft Aff. Ex. V, at NKA 0000225. For comparison, Gee audited the other IRD charge nurses, Olson and Teresa Osborne. Gee Dep. 119:7-14. Gee found that in March, Osborne had no discrepancies and Olson had four discrepancies.[3] Id. at 123:18-20 Olson was not disciplined.

At a meeting on April 4, 2011, Anderson confronted Lichty about her discrepancies. Anderson Dep. 180:8-12, 181:3-7.

---

[3] Allina considered Olson's discrepancies "resolved," as the administration was not recorded on the MAR but was written in Olson's patient notes. Gee Dep. 124:3-12.

4

Anderson allegedly told Lichty that she appeared on a Hot List and asked if she had been diverting medication. Lichty Dep. 235:13-24. Lichty responded that she felt Allina was disciplining her to avoid accommodating her FMLA leave and restrictions. Id. at 230:12-21. At the conclusion of the meeting, Anderson placed Lichty on paid administrative leave pending further investigation. Anderson Dep. 186:15-25.

Thereafter, on April 11, 2011, Lichty was terminated. Lichty Dep. 236:3-6. The termination notice read, in part:

> After an extensive audit of the medical record and [P]yxis history for the month of March, there were 14 individual patient episodes in which documentation was inconsistent with Allina policy and nursing standards of care. Furthermore, controlled substance medications could not be fully accounted for .... Specifically, controlled substance medications were not consistently charted on the patient MAR. On several occasions, medications [sic] administrations were recorded in the nurse's notes but not the MAR. The MAR and [Lichty's] nurse's note did not match on several occasions, and on 9 separate episodes, medications were removed with no administration documentation of any kind. Also, medications were removed for patients not in the department and without valid orders on 10 separate episodes.

Toft Aff. Ex. V, at NKA 0000225. In an email later that day to Allina supervisors, Anderson described the reason for termination as "possible drug diversion." Vander Pol Aff. Ex. EE.

On February 21, 2013, Lichty filed this action, alleging disability discrimination, failure to accommodate, disability

5

reprisal[4] and violations of the FMLA. Defendants move for summary judgment.

**DISCUSSION**

**I. Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P.

---

[4] Lichty alleges her disability-related claims under both the Americans with Disabilities Act (ADA) and the Minnesota Human Rights Act (MHRA).

6

56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. Disability Discrimination**

Lichty first alleges claims for disability discrimination under the ADA and MHRA. Both statutes prohibit employers from discriminating against individuals because of their disability.[5] See 42 U.S.C. § 12112(a); Minn. Stat. § 363A.08. A plaintiff may withstand a summary judgment motion either by presenting direct evidence of discrimination or "by creating the requisite inference of unlawful discrimination through the McDonnell Douglas [Corp. v. Green, 411 U.S. 792 (1973),] analysis." St. Martin v. City of St. Paul, 680 F.3d 1027, 1033 (8th Cir. 2012) (citations and internal quotation marks omitted).

**A. Direct Evidence**

Lichty first argues that she has adduced direct evidence of discrimination. Specifically, she argues that in responding to an Unemployment Insurance Request for Information, Allina stated that the decline in work performance began when Lichty "returned from a[] [leave of absence] requesting accommodation for light duty

---

[5] Other than one exception not relevant here, the ADA and MHRA are analyzed under the same standard. See Kammueller v. Loomis, Fargo & Co., 383 F.3d 779, 784 (8th Cir. 2004).

7

which was granted." Vander Pol Aff. Ex. GG, at 3. Elsewhere in the request for information, however, Allina listed the reason for discharge as "[d]iscrepancies noted between medication documentation ... lead [sic] to extensive audit for month of March. There were 14 episodes where documentation did not follow Allina policy, controlled substances could not be fully accounted for." Id. at 1.

"Direct evidence is that which shows a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." St. Martin, 680 F.3d at 1033 (citation and internal quotation marks omitted). Direct evidence "most often comprises remarks by decisionmakers that reflect, without inference, a discriminatory bias." McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 861 (8th Cir. 2009). Human Resources Generalist Paula Wahlberg - who completed the questionnaire - was not the decisionmaker in Lichty's termination and was only tangentially involved in the investigation. Wahlberg Dep. 12:19-21; see Yates v. Douglas, 255 F.3d 546, 549 (8th Cir. 2001) (finding that supervisor "was not sufficiently involved in the employment decision to qualify his comments as direct evidence of

discrimination" (citation omitted)). As a result, the court finds that the response to the unemployment questionnaire is not direct evidence of discrimination analysis.

**B.  McDonnell Douglas Analysis**

In the absence of direct evidence, the court analyzes the disability discrimination claims under the burden-shifting framework of McDonnell Douglas. See Dovenmuehler v. St. Cloud Hosp., 509 F.3d 435, 439 n.4 (8th Cir. 2007). To establish a prima facie case of disability discrimination, a plaintiff must show that (1) she was disabled; (2) she was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) she suffered an adverse employment action due to her disability. See Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action. Id. at 516-17.

Here, even if Lichty could establish a prima facie case of disability discrimination, Allina has articulated a nondiscriminatory reason for her termination: Lichty's failure to properly document medication administration. As a result, the burden shifts to Lichty to show that the proffered reason was "not the true reason[] for discharge, but merely a pretext for" discrimination. Wood v. SatCom Mktg., LLC, 705 F.3d 823, 829 (8th Cir. 2013) (citation and internal quotation marks omitted).

9

To show pretext, a plaintiff "must point to enough admissible evidence to raise genuine doubt as to the legitimacy of the defendant's motive, even if that evidence [does] not directly contradict or disprove [the] defendant's articulated reasons for its actions." Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 793 (8th Cir. 2011) (alterations in original) (citation and internal quotation marks omitted). Lichty argues that a jury could find Allina's proffered reason to be pretextual based on (1) her co-workers' complaints of having to accommodate her work restrictions, (2) a favorable performance review weeks before being terminated, (3) the treatment of similarly-situated employees and (4) Allina's shifting explanations for her termination.

Complaints or other comments by Lichty's co-workers, however, are not probative of pretext, as they were "stray remarks" made by non-decisionmakers. See Reynolds v. Land O'Lakes, Inc., 112 F.3d 358, 363 (8th Cir. 1997). Moreover, while recent favorable performance reviews may in some instances be evidence of pretext, Anderson did not know of the medication discrepancies at the time he gave Lichty a positive performance review. "A review issued without ... knowledge [of the proffered reason] is irrelevant" to the pretext analysis. Smith v. Allen Health Sys., Inc., 302 F.3d 827, 834 (8th Cir. 2002).

Lichty next argues that she was treated differently than similarly-situated employees. Specifically, Lichty argues that

10

Olson was retrained on proper documentation procedures rather than disciplined for her medication discrepancies. At the pretext stage, Lichty must satisfy the rigorous standard for establishing that similarly-situated employees were treated differently. See Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 853 (8th Cir. 2005), abrogated on different grounds by Torgerson v. City of Rochester, 643 F.3d 1031 (8th Cir. 2011). "To be similarly situated, the comparable employees must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct *without any mitigating or distinguishing circumstances*." Tolen v. Ashcroft, 377 F.3d 879, 882 (8th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Here, Olson had only four charting discrepancies, all of which were considered "resolved." Gee Dep. 123:18-20, 124:3-12. Conversely, Lichty had twenty-five unresolved discrepancies. Id. at 97:20-24. As a result of these differences, Lichty and Olson were not similarly situated, and Allina's different treatment of Olson is not indicative of pretext.

Finally, Lichty argues that Allina changed its explanation for her termination. Specifically, Lichty argues that Allina has stated that she was terminated both for possible drug diversion and for discrepancies in medication administration. A change in the proffered reason for a termination may support a finding of pretext, but only if the employer gives "two completely different

11

explanations for their decisions to terminate." EEOC v. Trans State Airlines, Inc., 462 F.3d 987, 995 (8th Cir. 2006) (citations omitted). Here, the two purportedly-different explanations - suspected drug diversion and medication charting discrepancies - are closely related and not "completely different." As a result, Allina's explanations for the termination are not probative of pretext. Therefore, Lichty has raised no material fact issues as to whether the proffered reason was pretextual, and summary judgment on the disability discrimination claims is warranted.[6]

**III. Failure to Accommodate**

Lichty next argues claims under the ADA and MHRA for failure to accommodate her disability. Failure-to-accommodate claims are subject to a modified burden-shifting framework. Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 712 (8th Cir. 2003). A failure-to-accommodate claim requires a plaintiff to show that (1) she is a qualified individual with a disability, and (2) the employer knew of the disability but failed to provide reasonable accommodations

---

[6] Lichty also brings claims for (1) disability reprisal under the ADA and MHRA and (2) retaliation under the FMLA. Each of these claims proceeds under the McDonnell Douglas framework. See Wierman v. Casey's Gen. Stores, 638 F.3d 984, 999 (8th Cir. 2011) (FMLA retaliation); Amir v. St. Louis Univ., 184 F.3d 1017, 1025 (8th Cir. 1999) (ADA retaliation); Bergstrom-Ek v. Best Oil Co., 153 F.3d 851, 859 (8th Cir. 1998) (MHRA reprisal). As already explained, however, even if Lichty could establish a prima facie case of reprisal or retaliation, she has not introduced evidence from which a reasonable jury could find that Allina's proffered reason for the termination was pretextual. As a result, summary judgment is warranted on the reprisal and retaliation claims.

12

through an interactive process. See Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc., 439 F.3d 894, 900 (8th Cir. 2006).

Lichty cannot establish that Allina failed to provide her with a reasonable accommodation. Indeed, it is undisputed that, by allowing her lifting restrictions and a modified work schedule, Allina accommodated each of Lichty's requests. Lichty has not identified a specific request that she made that Allina failed to accommodate. Rather, she argues that Allina failed to take remedial steps when she informed Anderson that co-workers were making comments about assisting her with her lifting duties. The record indicates, however, that Anderson reassured Lichty that the issue of reasonable accommodation was between Lichty and Allina "and it has nothing to do with what [co-workers] think." Lichty Dep. 120:19-21. Moreover, Anderson informed Lichty's co-workers of their obligation to accommodate the restrictions. Anderson Dep. 115:15-18. As a result, Lichty cannot demonstrate that Allina failed to accommodate her requests. See Buboltz v. Residential Advantages, Inc., 523 F.3d 864, 870 (8th Cir. 2008) (noting that plaintiff must show, among other things, "that the employer did not make a good faith effort to assist her in making accommodations"), abrogated on other grounds by Torgerson v. City of Rochester, 643

F.3d 1031 (8th Cir. 2011). Therefore, summary judgment is warranted on the failure-to-accommodate claims.[7]

## IV. FMLA Interference

Finally, Lichty argues that Allina interfered with her FMLA rights by terminating her while she was on intermittent FMLA leave. The FMLA prohibits an employer "from interfering with, restraining, or denying an employee's exercise of ... any [FMLA] right." Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006) (citation omitted). The FMLA, however, does not impose strict liability on an employer who terminates an employee while they are on FMLA leave. See Throneberry v. McGehee Desha Cnty. Hosp., 403 F.3d 972, 979-80 (8th Cir. 2005). In other words, "if the employer would have discharged the employee for [misconduct] if the employee were not on FMLA leave, then the employer would be justified in discharging the employee for [misconduct] while the employee was on FMLA leave." Id. at 980. Indeed, "where an employer's reason for dismissal is insufficiently related to FMLA leave, the reason will not support the employee's recovery." Stallings, 447 F.3d at 1051 (citation omitted). As already discussed, no reasonable jury could find that Allina terminated Lichty for reasons other than the

---

[7] Lichty also argues that her "failure to accommodate claim is premised largely on her termination." Mem. Opp'n 38. As already explained, Allina has proffered a non-discriminatory reason for the termination and Lichty cannot establish a material fact issue to support a finding of pretext. Therefore, to the extent that Lichty relies on her termination to support a failure-to-accommodate claim, summary judgment is warranted.

14

proffered reason, which was wholly unrelated to FMLA leave. Therefore, Lichty cannot establish that Allina interfered with her FMLA rights, and summary judgment on this claim is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 45] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 4, 2013

s/David S. Doty
David S. Doty, Judge
United States District Court
